A. M. MULDROW et al., Appellants,

v.

TEXAS FROZEN FOODS, Inc., Appellee.

No. 10417.

Court of Civil Appeals of Texas.

Austin.

June 20, 1956.

Rehearing Denied Aug. 8, 1956.

John Ben Shepperd, Atty. Gen., W. V. Geppert, L. P. Lollar, Asst. Attys. Gen., for appellants.

Kelley, Looney, McClean & Littleton, Willard E. Dollahon, Edinburg, for appellee.

HUGHES, Justice.

This suit was by appellee, Texas Frozen Foods, Inc. against A. M. Muldrow, Jesse James, John Ben Shepperd, Secretary of State, Treasurer and Attorney General, respectively, of the State of Texas.

The object of the suit was to recover $627 paid under protest as a penalty for alleged failure of Frozen Foods to pay its corporate franchise tax for the year 1956 on time. The trial was nonjury.

The judgment for appellee recited:

"That the sum of Six Hundred Twenty-seven and 00/100 ($627.00) Dollars was properly paid by the plaintiff, Texas Frozen Foods, incorporated, under protest in accordance with the provisions of Article 7057b, V.A.C.S., to the Secretary of State of the State of Texas and was by him transmitted to the defendant Jesse James as State Treasurer of the State of Texas, and in connection with such transmittal the said Secretary of State informed the

said State Treasurer in writing that such money was paid under protest, and the said State Treasurer has in all things complied with the applicable provisions of law as to such payment."

Appellants have filed a motion to dismiss this case for want of jurisdiction. The basis of the motion is that Art. 7057b, Vernon's Ann.Civ.St., under which this suit is brought, does not authorize suits to recover "penalties" paid under protest but only to recover "taxes" and "penalties" not being any part of "taxes" are not covered by such Article and hence this is a suit against the State without its permission.

Art. 7057b, provides in part:

"Sec. 1. Any person, firm or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license or other privilege tax or fee, and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized."

Provisions are then made for filing suit and for holding the disputed payment in a suspense account until the suit is finally determined and ownership of the money established.

Appellee's reply to this motion is that Art. 7057b is broad enough to include "penalties" but if not then this suit is not against the State but only against officials of the State who have exceeded their lawful authority in receiving and retaining the money for the recovery of which this suit is brought.

The pleading of appellee was that it have judgment against each of the officials sued, jointly and severally. The judgment, however, was in conformity with the provisions of Art. 7057b.

We do not believe we are called upon to decide the question as to whether Art. 7057b includes "penalties" as monies which may be paid under protest. The fact here is that the penalty was paid by appellee, received and handled by the State and the suit tried below all upon the theory that the proceedings were under Art. 7057b.

We are required to dispose of a case upon the theory under which it was tried below. Vol. 3–B, Tex.Jur., p. 275.

We add, however, that if this penalty does not come within Article 7057b then it should not have been so received by the State and if so received such reception was unlawful and this suit would not be against the State but against the officials who wrongfully received and retained this money. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837.

In no event would we dismiss this suit for if it is not properly brought under Art. 7057b then appellee is entitled to attempt recovery from the individual appellants.

The motion to dismiss this suit is overruled.

The material facts are either stipulated or are undisputed.

Appellee owed a franchise tax to the State for the year 1956 in the sum of $2,508.00 which should have been paid prior to May 1, 1955.

In payment of this tax appellee issued its check therefor dated April 30, 1955, and drawn on the First National Bank of Harlingen, Texas, and payable to the "Department of State." This check was endorsed by the Secretary of State "Pay to the order of Treasurer, State of Texas."

The State Treasurer endorsed the check for collection and sent it through regular banking channels and in due course the check was returned unpaid for lack of sufficient funds. Upon redeposit the check was paid but this was after the May 1 deadline for paying the franchise tax.

The reasons the check was dishonored upon its first presentation to the Harlingen Bank are stated in a letter dated June 17, 1955, written by the President of the bank to the office of the Secretary of State, which we quote:

"This will confirm our telephone conversation of this afternoon in which I explained to you the circumstance surrounding the return to your department of a check of $2,508.00 signed by Texas Frozen Foods Corporation and was in payment of their franchise tax.

"On March 7, 1955 the Texas Frozen Foods Corporation gave us their note for $55,000, but at that time we only advanced $40,000 with the agreement and understanding that the balance would be disbursed if and when needed. On May 7th we advanced another $10,-000, thereby leaving $5,000 to be advanced. Just about the same time the check of $2,508.00 was issued to you, Mr. Cecil Carruth, president of Texas Frozen Foods Corporation, advised us that they would need the additional $5,-000.00. Through an oversight, our Note Department did not make this advance, hence when the check of $2,-508.00 came in for payment it was returned marked 'Insufficient Funds'. This is an error on our part, which, of course, the writer regrets very much and I trust that due to these circumstances that no penalties will have to be assessed.

"Assuring you that any consideration shown will be greatly appreciated and that there was no wilful delay in making payment, I remain,"

Appellants have six points the last four of which relate to waiver and estoppel as constituting a possible basis of the judgment for appellee. We do not ground our decision upon either waiver or estoppel, hence such points will not be discussed.

Appellants' first two points are to the effect that since the tax was not paid when due the statutory penalty attached by operation of law and since appellee had insufficient funds in its account to pay the check, even though timely given, upon presentation the penalty attached by operation of law upon such dishonor unaffected by the check's ultimate payment after the tax deadline.

Were we to reckon without the case of Hamilton v. Baker, 147 Tex. 240, 214 S.W. 2d 460, 461, we would have little difficuly in agreeing with appellants. That case, however, we believe to be controlling here and to require affirmance of the Trial Court's judgment.

The following quotation from that case will reveal enough of the facts to explain the holding of the Court:

"But it does not become necessary in this case to resort to equitable considerations and reasoning to conclude with certainty that the Baker lease did not terminate. This for the reason that the rentals in dispute were paid by the timely delivery and acceptance of a check which was in fact good, and accordingly the lease was effectively continued in force. Looking to the substance rather than the form of the transactions between the parties, the check was in fact a good one at all times from the opening of the drawee bank the morning after its delivery until it was mailed back to Mays some eight months later. Quite accidentally the check did reach the drawee bank at a time when Mays' balance was too low to cover it and the notation of the arrangement between Mays and the bank

was not on Mays' ledger sheet. To add to these mishaps, the officer who agreed with Mays to pay the check was temporarily absent. These fortuitous events did not at all render the check a worthless one. To the contrary, it was in fact good. Merely by the veriest of mistakes was it returned unpaid. If Mays had had ample funds on deposit to cover the check and by error some bank employee had returned it unpaid, giving as a reason that the drawer had insufficient funds to cover it, none would contend that the check was not in fact good. Such a mistake as that would not result in a termination of the lease. Now, Mays had a valid commitment from the bank to pay the check upon presentation, and so had sufficient funds available at the drawee bank to pay it when presented."

This case has been tried as if there were no issues of fact pertaining to appellee's arrangement with the Harlingen bank. No one from the bank testified and no one from appellee's organization testified. The sole evidence of the arrangement is the letter from the bank's president which we have set out herein.

Appellants construe the letter as showing that it was May 7th or later that arrangements were made to deposit to appellee's account funds sufficient to pay the $2,508 check.

The letter is incomplete and is a poor substitute for the testimony which the bank and appellee could have given regarding the loan transaction.

It is, of course, common place for a customer to arrange a line of credit with a bank to be advanced as needed and so as not to be charged with unnecessary interest.

We interpret the letter as evidencing this character of arrangement. The line of credit obtained and to which the bank had committed itself was not exhausted and was sufficient to pay the $2,508 check. We accept in full, as the Trial Court must have done, the statement of the bank that the nonpayment of the check was "an error on our part."

The judgment of the Trial Court is affirmed.

Affirmed.